# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 15-1498V
(not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
CANDACE M. THOMPSON and         *
STEPHEN E. POWELL parents of A.H.P,   *
a minor,                        *
                                *
                                *   Special Master Corcoran
            Petitioners,        *
                                *
                                *   Dated: August 2, 2017
        v.                      *
                                *   Attorney's Fees and Costs;
                                *   Reasonable Basis.
SECRETARY OF HEALTH AND         *
HUMAN SERVICES,                 *
                                *
            Respondent.         *
                                *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Phyllis Widman*, Widman Law Firm, LLC, for Petitioners.

*Camille Collett*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## DECISION GRANTING IN PART AN AWARD OF ATTORNEY'S FEES AND COSTS[1]

On December 11, 2015, Candace Thompson and Stephen Powell, on behalf of their son, A.H.P., filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] In it, Petitioners alleged that the Diphtheria Tetanus acellular Pertussis ("DTaP"), haemophilus influenza B, inactivated Polio, pneumococcal conjugate, and rotavirus vaccines A.H.P. received on December 11, 2012, caused him to experience a Table

---

[1] Although this Ruling has been formally designated "not to be published," it will nevertheless be posted on the Court of Federal Claims's website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the ruling will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Ruling in its present form will be available. *Id.*

[2] The National Vaccine Injury Compensation Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. § 300aa-10 through 34 (2012)).

Case 1:15-vv-01498-UNJ   Document 48   Filed 08/30/17   Page 2 of 6

encephalopathy, or (alternatively) that the DTaP vaccine caused A.H.P's encephalopathy as well as his subsequent autism spectrum disorder ("ASD"). Amended Petition at 2-3. Respondent filed his Rule 4(c) Report in conjunction with a motion to dismiss, and after considering the record, I issued a decision dismissing the claim on May 15, 2017, finding that onset was too far attenuated to be vaccine caused. *See* Decision (ECF No. 36). Shortly thereafter, Petitioners filed a Motion for Reconsideration of my Decision, which I denied on June 8, 2017. *See* Motion for Reconsideration, dated June 5, 2017 (ECF No. 37) ("Mot. for Reconsideration); Order Denying Motion for Reconsideration, dated June 8, 2017 (ECF No. 38).

Petitioners have now filed a motion requesting an award of attorney's fees and costs. *See generally* Motion for Attorney's Fees and Costs, dated July 3, 2017 (ECF No. 41) ("Fees App."). Petitioners request an award of $24,981.12 ($24,450.00 in attorney's fees, plus $400.47 in costs expended by Petitioners' counsel).[3] Fees App. at 3. In accordance with General Order No. 9, Petitioners stated that they incurred no personal costs associated with the case. *Id.* at Exhibit D. Respondent filed a brief in reaction on July 21, 2017, opposing the application for fees and costs in its entirety, arguing that no reasonable basis existed. *See* Response to Motion for Attorney's Fees, filed on July 21, 2017 (ECF No. 43) ("Response"). Petitioners filed a reply maintaining that their case had a reasonable basis. *See* Reply to Response, filed on July 31, 2017 (ECF No. 44)("Reply").

For the reasons stated below, I hereby **GRANT IN PART** Petitioners' Motion, awarding at this time interim fees and costs in the total amount of **$12,823.62**.

## Procedural History

As the billing records for Petitioners' counsel, Ms. Phyllis Widman, Esq., indicate, Petitioners first contacted Ms. Widman two days before the statute of limitations ran on their case. Fees App. at Exhibit A. Ms. Widman filed the petition on the day the statute of limitations expired, and months later filed an amended petition to reflect a more detailed depiction of the case after reviewing the majority of the medical records. *See* Amended Petition, dated Mar. 31, 2016 (ECF No. 11).

During the next six months of the case, Petitioners filed outstanding medical records along with their own affidavits. Respondent filed his Rule 4(c) Report on October 17, 2016. *See* Respondent's Report (ECF No. 27). The report also included a motion to dismiss based on Respondent's argument that this case was similar to the many other autism cases that relied on theories that had been rejected in the omnibus autism proceedings ("OAP"). *Id.* at 2. I then ordered

---

[3] Petitioners' fee application bills for 81.50 hours for a total of $24,450.00, but that number is incorrect. After adding all the time itemized in Ms. Widman's invoice, the total amount of hours spent on the matter was 81.95, for a total of $24,585.00. Fees App. at 3. Moving forward on the calculation of fees, I will use the correct amount, not the erroneous amount that was requested in the fees application.

Petitioners to respond to the motion, directing them to address specific facts of their case that differ from those litigated in the OAP.[4] *See* Scheduling Order, dated Nov. 4, 2016 (ECF No. 28). Petitioners' response was filed on December 19, 2016 (after denying Petitioners' request for an extension of time filed on the due date for the response). *See* Response to Respondent's Rule 4 Report, date Dec. 19, 2017 (ECF No. 34) ("Response").

On May 16, 2017, I issued a decision dismissing the case based on the factual similarity between this case and those that had been dismissed through the OAP. *See* Decision, dated May 16, 2017 (ECF No. 36). Petitioners' subsequently filed a motion for reconsideration based on potential future findings of the presence of a genetic disorder in A.H.P. *See* Mot. for Reconsideration. I denied the motion and Petitioners elected to file a civil action.

As the billing records reveal, the majority of work performed on this case occurred prior to the November 2016 status conference, at which time I informed Petitioner of my specific concerns about the claim's viability. Less than thirty percent of the approximately 82 hours devoted to this matter in full were expended thereafter. Fees App., Exhibit B. After my decision, Petitioners incurred only 10.45 additional hours of attorney time on the matter. Of course, Petitioners had ten months between the case's initiation and filing of the Rule 4(c) Report to discern the claim's weaknesses – thus allowing the question as to why such time was expended at

---

[4] Several years ago, more than 5,400 cases were initially filed under short form petition in the OAP, where thousands of petitioners' claims that certain vaccines caused autism were joined for purposes of efficient resolution. A "Petitioners' Steering Committee" was formed by many attorneys who represent Vaccine Program petitioners, with about 180 attorneys participating. This group chose "test" cases to represent the entire docket, with the understanding that the outcomes in these cases would be applied to cases with similar facts alleging similar theories.

The Petitioners' Steering Committee chose six test cases to present two different theories regarding autism causation. The first theory alleged that the measles portion of the measles, mumps, rubella ("MMR") vaccine precipitated autism, or, in the alternative, that MMR plus thimerosal-containing vaccines caused autism, while the second theory alleged that the mercury contained in thimerosal-containing vaccines could affect an infant's brain, leading to autism.

The first theory was rejected in three test case decisions, all of which were subsequently affirmed. See generally Cedillo v. Sec'y of Health & Human Servs., No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), mot. for review den'd, 89 Fed. Cl. 158 (2009), aff'd, 617 F.3d 1328 (Fed. Cir. 2010); Hazlehurst v. Sec'y of Health & Human Servs., No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), mot. for review den'd, 88 Fed. Cl. 473 (2009), aff'd, 605 F.3d 1343 (Fed. Cir. 2010); Snyder v. Sec'y of Health & Human Servs., No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), aff'd, 88 Fed. Cl. 706 (2009).

The second theory was similarly rejected. Dwyer v. Sec'y of Health & Human Servs., No. 03-1202V, 2010 WL 892250 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); King v. Sec'y of Health & Human Servs., No. 03-584V, 2010 WL 892296 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); Mead v. Sec'y of Health & Human Servs., No. 03-215V, 2010 WL 892248 (Fed. Cl. Spec. Mstr. Mar. 12, 2010).

Ultimately a total of eleven lengthy decisions by special masters, the judges of the U.S. Court of Federal Claims, and the panels of the U.S. Court of Appeals for the Federal Circuit, unanimously rejected petitioners' claims. These decisions found no persuasive evidence that the MMR vaccine or thimerosal-containing vaccines caused autism. The OAP proceedings concluded in 2010

all.

Petitioners filed this final fee request on July 3, 2017, followed by Respondent's reaction on July 21, 2017, and Petitioners' reply on July 31, 2017. This matter is now ripe for a decision.

**ANALYSIS**

**I.     The Case Has Sufficient Reasonable Basis for a Modest Fees Award**

I have in prior decisions set forth at length the relevant legal standards governing attorney's fees awards in unsuccessful cases, and in particular the criteria to be applied when determining if a claim possessed "reasonable basis."[5] *See, e.g.*, *Allicock v. Sec'y of Health & Human Servs.*, No. 15-485V, 2016 WL 3571906 at 4-5 (Fed. Cl. Spec. Mstr. May 26, 2016) *aff'd on other grounds*, 128 Fed. Cl. 724 (2016); *Gonzalez v. Sec'y of Health & Human Servs.*, No. 14-1072V, 2015 WL 10435023, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 10, 2015). In short, a petitioner must demonstrate reasonable basis through some evidentiary showing and in light of the totality of the circumstances. The nature and extent of an attorney's investigation into the claim's underpinnings, both before and after filing (and here, particularly after the OAP test cases were concluded) is a relevant consideration. *Cortez v. Sec'y of Health & Human Servs.*, No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *Di Roma v. Sec'y of Health & Human Servs.*, No. 90–3277V, 1993 WL 496981, at *2 (Fed. Cl. Spec. Mstr. Nov. 18, 1993) (citing *Lamb v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 255, 258–59 (1991)).

Claims involving the allegations that a child's autism is vaccine-caused are especially suspect in light of ample Program decisions addressing the weaknesses of the theory. *Cunningham v. Sec'y of Health & Human Servs.,* No. 13-483V, 2016 WL 4529530 (Fed. Cl. Spec. Mstr. Aug. 1, 2016) *aff'd*, 2017 WL 1174448 (Fed. Cl. Mar. 22, 2017). I have previously noted that such claims warrant careful consideration, and that even when a looming limitations cut-off requires prompt filing of a claim before it can be vetted by counsel, prompt action must be taken thereafter, so that a case alleging a theory that is lacking can be rapidly disposed of instead of taking up unnecessary time and consideration. *Curran v. Sec'y of Health & Human Servs.,* No. 15-804V, 2016 WL 4272069, at *3 (Fed. Cl. Spec. Mstr. June 22, 2016), *aff'd in part and remanded* 130 Fed. Cl. 1 (Jan. 3, 2017).

Based on my review of the case, coupled with the history of counsel's representation of Petitioners as set forth in the billing records, I conclude that this matter's reasonable basis

---

[5]Although good faith is one of the two criteria that an unsuccessful petitioner requesting a fees award must satisfy, it is an easily-met one – and Respondent does not appear to question it in this case. *Grice v. Sec'y of Health & Human Servs.*, 36 Fed. Cl. 114, 121 (1996) (in the absence of evidence of bad faith, special master was justified in presuming the existence of good faith).

weaknesses could have been evaluated far sooner, and without the need for extensive briefing by the parties. Even though Ms. Widman may arguably have had insufficient time to research the claim's grounds at the time it was presented to her, she had months thereafter to do so. Moreover, by the time I expressed my specific concerns about the claim's viability in the November 2016 status conference, I had issued four decisions dismissing autism claims, *See e.g., R.V. v. Sec'y of Health & Human Servs.,* No. 08-504V, 2016 WL 3882519, at \*25 (Fed. Cl. Spec. Mstr. Feb. 19, 2016); *Murphy v. Sec'y of Health & Human Servs.*, No. 05-1063, 2016 WL 3034047, at \*37 (Fed. Cl. Spec. Mstr. April 25, 2016); *Wolf v. Sec'y of Health & Human Servs.*, No. 14-342V, 2016 WL 6518581, n. 13 (Fed. Cl. Spec. Mstr. Sept. 15, 2016); *Tebault v. Sec'y of Health & Human Servs.,* No. 16-478, 2016 WL 6903568 (Fed. Cl. Spec. Mstr. Oct. 27, 2016). Counsel was on notice that certain facts evident from this case - the lengthy gap between vaccination and onset, as well as the absence of evidence supporting the finding that the facts fit the Table definition for an encephalopathy – made this case little different from the many similar rejected claims that went before.

Because I am cognizant of the fact that Ms. Widman was contacted by Petitioners with very limited time to collect medical records and other evidence before proceeding with the filing a petition, and because she has not previously litigated an autism claim before me, I am reluctant to find that under these circumstances the case should have been found to lack reasonable basis at the outset. I will therefore allow some award of fees herein. However, I have previously ruled that attorneys with facially weak claims must act expeditiously to evaluate the claim's strength, and are properly tasked with making such determinations on their own. *Curran*, 130 Fed. Cl. 1, at 11. Because of the amount of time that passed without any apparent effort by counsel to evaluate its strength, I will cut at the outset the total hours that I will consider for an award in this case by 50 percent, reducing the award's ceiling by 40.97 hours, to accomplish the "rough justice" that I am empowered to effect when making fees awards in the Program. Counsel is expected in the future to take a far more skeptical eye to autism vaccine injury claims, and to act more expeditiously if they are presented.[6]

## II.    Specific Amounts Awarded to Petitioners' Attorneys

Petitioners' request that Ms. Widman be compensated at the rate of $300 per hour for all work performed in the years 2015-2017. The hourly rate she requests herein is reasonable for someone of her experience, and I will award it. Applying this rate to my hour's calculation, I will award attorney's fees in the amount of $12,292.50 ($24,585.00 x .50). Finally, I find that the amount of costs requested are reasonable and will be awarded in full.

---

[6] My reduction in hours also takes into account lawyerly inefficiencies evident from the record that are separate from counsel's failure to fully vet the claim after its filing. For example, counsel billed over six hours to draft a short amended petition, took almost a year to file the medical records, and also waited until the eve of a deadline to begin drafting a document then requesting an extension of time the day the filing is due. *See generally,* Fees App, Exhibit B, at 1-2, 7.

## CONCLUSION

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of attorney's fees and costs awards, and based on the foregoing, I **GRANT IN PART** Petitioners' Motion for Attorney's Fees and Costs, awarding **$12,823.62** ($12,292.50 + $531.12) in fees and costs made payable jointly to Petitioners' counsel Phyllis Widman, Esq., and Petitioners. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[7]


**IT IS SO ORDERED.**


/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.